

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PRECON DEVELOPMENT CORPORATION, INC.,

      Plaintiff,

  v.                         CIVIL NO. 2:08cv447

UNITED STATES ARMY CORPS OF ENGINEERS,

      Defendant.

## OPINION AND FINAL ORDER

This matter comes before the court on cross motions for summary judgment filed by Plaintiff Precon Development Corporation Inc. ("Precon") on March 28, 2013, and Defendant United States Army Corps of Engineers ("Corps") on April 22, 2013. The motions were referred to United States Magistrate Judge Tommy E. Miller by Order of May 5, 2013, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). The Magistrate Judge heard oral argument on the motions on May 23, 2013, and the Magistrate Judge's Report and Recommendation ("R&R") was filed on July 25, 2013.

The Magistrate Judge recommended granting the Corps' Motion for Summary Judgment and denying and dismissing Precon's Motion for Summary Judgment. By copy of the R&R, the parties were advised of their right to file written objections thereto. On

August 12, 2013, Precon filed objections to the R&R, to which the Corps responded on August 29, 2013. As discussed _infra_ in Part III, the court, having examined the objections and response to the objections to the R&R, and having made _de novo_ findings with respect thereto, does hereby **GRANT** the Corps' Motion for Summary Judgment and **DENY** Precon's Motion for Summary Judgment.[1]

## I. **The Fourth Circuit's Remand for Reconsideration**

Without belaboring the procedural history and factual background as recounted in the R&R, this matter is before the court on remand from the United States Court of Appeals for the Fourth Circuit for "the Corps' reconsideration of its significant nexus determination." _Precon Development Corp., Inc. v. U.S. Army Corps of Engineers_, 633 F.3d 278, 297 (4th Cir. 2011) ("_Precon_"). In _Precon_, the Fourth Circuit found that, although the Corps properly aggregated, and found to be "similarly situated" for jurisdictional analysis purposes, 443 acres of wetlands adjacent to Precon's 4.8 acres of wetlands, the administrative record contained "insufficient information to assess the Corps' conclusion" that a significant nexus exists

---

[1] In its brief, Precon requests a hearing on its objections to the R&R. After full examination of the briefs and the record, the court has determined that a hearing is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. See Fed. R. Civ. P. 78(b); Local Civ. R. 7(J).

between the wetlands and a navigable body of water. See Precon, 633 F.3d at 290, 293.

The Fourth Circuit provided guidance as to the nature of the record the Corps should create in reconsidering the significant nexus determination, which it stated is a "flexible ecological inquiry into the relationship between the wetlands at issue and [the Northwest River,] the traditional navigable water." Id. at 294 (citing Rapanos v. United States, 547 U.S. 715, 770-80 (2006)). First, the inquiry "does not require laboratory tests or any particular quantitative measurements in order to establish significance." Precon, 633 F.3d at 294. Qualitative evidence, such as expert testimony, may support a significant nexus determination. Id. Second, the Fourth Circuit, discussing Sixth and Ninth Circuit Courts of Appeals decisions, provided examples of the germane types of quantitative or qualitative evidence: (1) evidence of the functions of the relevant wetlands and their adjacent tributaries; and (2) evidence of the condition of the relevant navigable water. Id. at 296.

Specifically, the appellate court expressed concern that the record did not adequately address (1) the condition of the Northwest River; (2) the actual flow rates of the tributaries-- Saint Brides Ditch and the 2,500-foot Ditch; and (3) the

3

significance of that flow. Id. at 294-95. In explaining that the burden placed upon the Corps is not an "unreasonable" one, the Fourth Circuit requested, in accordance with Rapanos, that "the Corps pay particular attention to documenting why such wetlands significantly, rather than insubstantially, affect the integrity of navigable waters." Precon, 633 F.3d at 297.

## II. **Standard of Review of the Corps' Determination**

The Fourth Circuit articulated that the Corps' factual findings are entitled to deference under the "arbitrary and capricious" standard of the Administrative Procedure Act, 5 U.S.C. § 706(2), Precon, 633 F.3d at 296; and the agency's "legal determination" as to whether a significant nexus exists is entitled to deference "to the extent that the interpretation has the power to persuade." Id. at 291 (quoting U.S. Dep't of Labor v. N.C. Growers Ass'n, 377 F.3d 345, 353-54 (4th Cir. 2004) (citing Skidmore v. Swift, 323 U.S. 134, 140 (1944)); Precon, 633 F.3d at 296.[2]

---

[2] The Corps argues in its Motion for Summary Judgment that because a significant nexus determination involves application of the agency's regulatory definition of "waters of the United States," which is a mixed question of fact and law, and requires special technical agency expertise, the reasoning of the agency and its ultimate determination should be reviewed under a deferential "arbitrary and capricious" standard. Mem. Supp. Mot. Summ. J. at 13; Reply in Supp. Mot. Summ. J. at 3 (citing Deerfield Plantation Phase II-B Prop. Owner's Assoc. v. U.S. Army Corps of Eng'rs, 501 F. App'x 268, 274 (4th Cir. 2012)("We will set aside a challenged agency action if it is 'arbitrary,

### III. Analysis of the Report and Recommendation and Precon's Objections Thereto

Simply put, the question before this court on remand is: Does the administrative record support the Corps' determination that the relevant 448 acres of wetlands have a significant nexus to the Northwest River? The answer, simply put, is that the record does so support the nexus. The Corps' post-remand jurisdictional finding and supporting documentation, its response to Precon's experts' reports, and the administrative appeal decision explore each of the areas raised by the Fourth Circuit and conclusively determine that a significant nexus exists.

Precon's objections to the findings in the R&R largely reargue its position as stated in its Motion for Summary Judgment and Reply Brief, with respect to (1) the condition of the Northwest River (objections 1, 2, 3, 4, 6, 7, 9); (2) the flow of the relevant tributaries (objections 19, 20); and (3) the function of the wetlands in relation to these tributaries and the Northwest River (objections 8, 10, 11, 13, 14, 16, 17,

capricious, an abuse of discretion, or otherwise not in accordance with the law.' 5 U.S.C. § 706(2)(A).'")). Although discussed at length in the first Report and Recommendation, the court does not address this argument due to the Fourth Circuit's clear pronouncement of the appropriate standard of review in Precon, 633 F.3d at 291. See R&R, Aug. 19, 2009 (ECF No. 54).

18). The court will address each of these areas of objection in turn.

## A. The Condition of the Northwest River

The Northwest River is an impaired water body due to low dissolved oxygen ("DO") levels. See Administrative Record ("AR") 438 (citing the Virginia Department of Environmental Quality ("DEQ") Final 2010 305(b)/303(d) Water Quality Assessment Integrated Report at 3.3a-59). Low DO conditions are attributable, generally, to high levels of nitrogen and/or phosphorous. AR at 438, 447. Precon strenuously objects to any suggestion that the river suffers from excessive nitrogen, arguing this claim is false and unsupported by the evidence. Obj. at 9-12. Precon argues that the record solely supports that phosphorous is a nutrient of concern, as evidenced by the fact that DEQ developed a total maximum daily load ("TMDL") for phosphorous, but not for nitrogen. Id. at 12. Precon thus concludes that any role the Precon wetlands and the similarly situated wetlands play in nitrogen cycling does not significantly impact the chemical or biological quality of the Northwest River. Id. at 9.

This chain of logic collapses under scrutiny. First, as the Corps explained, the fact that DEQ developed a TMDL for phosphorous rather than nitrogen, as noted in the record, is

6

because phosphorous is less soluble than nitrogen and attaches to sediment more readily. See Resp. to Obj. at 8; AR at 328. Such is the norm in a water body with impaired DO segments. Id. Excess nutrient inputs cause eutrophication, which contributes to the low DO levels that make the Northwest River an impaired water body. Precon does not contest the basic scientific fact that both phosphorous and nitrogen are nutrients which contribute to low DO levels. The Fourth Circuit, prior to remand, stated that "we know that the wetlands and their adjacent tributaries trap sediment and nitrogen." Precon, 633 F.3d at 295.[3] Thus, the Corps' factual finding that the wetlands prevent additional nutrients from reaching the Northwest River is not arbitrary and capricious, and Precon's devotion of almost half of its objections to a lack of proof that the river suffers from high nitrogen levels is perplexing. While the Fourth Circuit did query as to whether the river suffers from high levels of nitrogen, it in no way indicated that this issue is dispositive as to whether a significant nexus exists. Id. Moreover, the record abundantly supports that both nitrogen and phosphorous are important to downstream water quality. See e.g., AR at 5, 8, 438, 447.

---

[3] Indeed, the record is rich with support for the Fourth Circuit's statement that wetlands act as a sink for nitrogen. See, e.g., AR at 12-14, 447.

7

Second, Precon's objections misunderstand the Corps' task on remand. It is not necessary for the Corps to show that there are high nitrogen levels in the Northwest River and its relevant tributaries. See Precon, 633 F.3d at 294 (emphasizing that the significant nexus standard "does not . . . require any particular quantitative measurements in order to establish significance"). A water body need not even be impaired in order to identify significant benefits wetlands serve in preventing deterioration of the river. This, of course, effectuates the purpose of the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251 (emphasis added). Here, as Precon concedes, the Corps has considerable evidence from both DEQ and its own experts that the Northwest River is, in fact, an impaired body of water, suffering from low DO levels. Thus, the Fourth Circuit's mandate to the Corps to consider "the condition of the relevant navigable water," as exhibited in the exemplary Sixth and Ninth Circuit cases,[4] is satisfied. Precon, 633 F.3d at 296.

---

[4] Precon attacks the Magistrate Judge's discussion of these two cases, arguing that the qualitative evidence in United States v. Cundiff, 555 F.3d 200 (6th Cir. 2009), and the quantitative evidence in Northern California River Water v. Healdsburg, 496 F.3d 993 (9th Cir. 2007), is lacking in the Corps' record. See Obj. at 15-16. Precon is correct that the evidence here does not precisely mirror that in Cundiff and River Watch, nor would one

## B. The Flow of the Tributaries

Precon characterizes the Magistrate Judge's evaluation of the significant nexus determination in relation to the evidence of flow in the Saint Brides Ditch as "meaningless." Obj. at 19. Cutting through the rhetoric, the objection appears to be that because the Corps' stream flow gauge data, as provided by the City of Chesapeake Public Works Department, is hypothetical flow rate data during various storm events, rather than "actual" flow rates, it is meaningless. It is not. It is entirely appropriate and rational for the Corps' experts to evaluate the information it has regarding flows and draw scientific conclusions therefrom. As the Corps acknowledges, there are no flow gauges on the Northwest River; thus, "direct comparison of the flows in the river to those in Saint Brides Ditch is not possible." Mem. Supp. Mot. Summ. J. at 19, n.14. In the absence of a perfectly refined calculation of the flow rates in either the relevant reach or the navigable water, the Corps appropriately analyzed

---

expect it to. Not only were those enforcement cases, in which the addition of pollutants to the water body was more readily ascertainable, but such evidence is not necessary for a significant nexus determination. Moreover, the record here reflects that the Corps amassed the type of relevant and determinable comparative information to which the Fourth Circuit nodded in its discussion of the Sixth and Ninth Circuit decisions. See Precon, 633 F.3d at 296. As Justice Kennedy stated in Rapanos, the significant nexus determination must be made on a "case by case basis," given the specific wetlands and water body at issue. 547 U.S. at 718.

the (uncontested) data points it has and incorporated this information into its significant nexus determination. AR at 8-9 (addressing Precon's expert's calculations), 432-34, 440; Resp. to Obj. at 16 ("There is no evidence to support Precon's assertion or to otherwise suggest that the engineering estimates performed by the City's expert staff were unreliable.").

The Fourth Circuit explicitly stated that it was not placing an "unreasonable burden" on the Corps, Precon, 633 F.3d at 296, and the Corps' reasoning, based on analysis of the hypothetical flow rates and its import to the Northwest River, warrants Skidmore deference, as it "has the power to persuade." Skidmore, 323 U.S. at 140; see also United States v. Mead Corp., 533 U.S. 218, 234, (2001) ("[A]n agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency.")(quoting Skidmore, 323 U.S. at 139).

## C. The Functions of the Wetlands

Precon lobs a series of critiques of the Corps' determination that the 448 acres of wetlands perform significant ecological functions in relation to the Northwest River, alleging that while its own experts "provided quantitative and qualitative evidence[,] . . . the Corps' experts simply expressed their opinions that a significant nexus exists." Obj.

at 12-13 (emphasis in original). This claim is meritless. Precon proceeds in Objections 11 and 13 to summarize, yet again, the report of its consultant, Chester Cahoon, III, of Bay Environmental Inc. The Corps properly considered and indeed engaged in a lengthy discussion of the scientific validity of Dr. Cahoon's statements and the conclusions he draws therefrom. See AR at 3-21 (analyzing "inconsistencies and misinterpretations" in Dr. Cahoon's report, including the limited statistical underpinnings supporting his conclusions, the inappropriateness of his reliance upon linear regression analysis, and evidentiary support in the record which undercut various claims).

Precon fundamentally misinterprets the role the court plays at this juncture in approaching the developed, analytically robust, and detailed administrative record before it on the specific factual findings with which it takes issue.[5] In the face of divergent expert opinions on factual issues, "[b]ecause analysis of the relevant documents 'requires a high level of

---

[5] One factual statement in the R&R which the parties agree is a misstatement, is that "there are 'uplands' areas in the drainage zone that are twenty feet above the wetlands." R&R at 21; see Obj. at 14, 16-17; Resp. at 11 ("While the Magistrate Judge's statement . . . is not accurate[,] the underlying principle that the wetlands receive runoff from uplands is accurate"). However, this minor mischaracterization of the record does not undermine the ultimate finding of the Magistrate Judge that the record supports the Corps' finding of a significant nexus.

technical expertise,' we must defer to 'the informed discretion of the responsible federal agencies.'" Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 377 (1989) (quoting Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976)). "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." Marsh, 490 U.S. at 378.

Although the court does not apply a more deferential standard of review to the legal determination that the wetlands have a significant nexus to the Northwest River, Precon, 633 F.3d at 290, the court's analysis of the record compels the conclusion that the Corps reasonably and amply provided persuasive support for its significant nexus determination through detailing the functions the wetlands play with respect to the Northwest River. See Resp. to Obj. at 18-19 (explaining that the Corps "documented field conditions, gathered available data, . . . examined aerial photographs, historical soil surveys, and national wetland inventory maps, and conducted on-the-ground site inspections" in reaching its significant nexus determination). In response to Precon's objections regarding the functions of the wetlands, the Corps, again, pointed to evidence in the record regarding the wildlife connection Precon alleged

12

was lacking, and the role tributaries play in regulating water flows and quality. See Resp. at 9-10 (citing AR at 4-7, 15-16, 466-494). Evaluating the full record, including Precon's experts' factual findings and conclusions to the contrary, the court finds that the Corps' extensive factual findings supporting its significant nexus determination were not arbitrary and capricious, and that the Corps' ultimate determination that the relevant wetlands have a significant nexus to the Northwest River is highly persuasive.

## IV. Conclusion

Having fully considered and reviewed the Administrative Record, the pleadings, the Report and Recommendation, and the objections and responses thereto de novo, together with the Fourth Circuit's mandate on remand, the court **ADOPTS** the Magistrate Judge's Report and Recommendation,[6] and hereby **GRANTS** the Corps' Motion for Summary Judgment and **DENIES** Precon's Motion for Summary Judgment. The Clerk shall forward a copy of this Opinion and Final Order to counsel for the parties.

---

[6] As noted by the Corps, the Magistrate Judge's findings are limited due to the procedural posture of the case. Resp. at 6 n.8. The Magistrate Judge reviewed the record and appropriately concluded that there "is more than enough evidence to support the Corps' finding that a significant nexus exists between the wetlands and the Northwest River." R&R at 31. This court agrees with that finding, and with the Magistrate Judge's recommendation as to disposition of the case. See supra note 5.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

November 18, 2013